UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PHILIP SULLIVAN, :
CHARLOTTE SULLIVAN, :
 :
      Plaintiffs, :
 :
v. : Civil No. 3:03cv1203 (MRK)
 :
JEFFREY STEIN, et al., :
 :
      Defendants. :

**<u>RULING AND ORDER</u>**

Currently pending before the Court is Defendants Gregory Zigmont and Charles Coffey's Renewed Motion to Dismiss [**doc. #223**] seeking dismissal of Plaintiffs' First and Fourth Amendment claims against them. For the reasons that follow, Defendants' motion is DENIED.

**I.**

It is well established that a *pro se* complaint "should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Thus, when considering motions to dismiss a *pro se* complaint such as this, "courts must construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests." *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (internal quotation marks omitted). This is particularly true when dealing with *pro se* complaints alleging civil rights violations. *See Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001).

Furthermore, the Second Circuit has recently emphasized that "*pro se* litigants . . . cannot be expected to know all of the legal theories on which they might ultimately recover. It is

1

enough that they allege that they were injured, and that their allegations can conceivably give rise to a viable claim." *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005). It is up to the district court to determine what claims a *pro se* plaintiff's complaint could raise, and in doing so, "the court's imagination should be limited only by [the plaintiff]'s factual allegations, not by the legal claims set out in his pleadings." *Id*.

## II.

The following facts, drawn from Plaintiffs' Proposed Second Amended Complaint are relevant to Plaintiffs' § 1983 claims. Defendants Gregory Zigmont and Charles Coffey were at all relevant times inspectors employed by the Connecticut Department of Civil Justice. *See* Proposed Second Am. Compl. at 5. Plaintiffs allege that on four separate occasions, September 29, 2000, January 22, 2001, January 25, 2001 and April 20, 2001, these Defendants entered their dwelling located at 37 Valley View Drive in Farmington, Connecticut. *Id*. at 55-58, 62-65. Plaintiffs' dwelling comprised a few rooms in the home of Plaintiff Philip Sullivan's mother, Mary Crowell, who allowed Plaintiffs to live in her house for nearly thirty years. *See id.* at 7-8. It is unclear precisely when, and under what circumstances, Plaintiffs left the premises, but it is clear that as of September 7, 2000, Plaintiffs were no longer physically residing there. *See* Proposed Second Am. Compl. at 21 (alleging that the locks had been changed in Plaintiffs' absence and, from that point on, Plaintiffs were not able to enter the premises). It is also clear that as of September 7, 2000, the majority of Plaintiffs' belongings had been moved from Ms. Crowell's house to the adjoining garage. *See id.*

When Defendants entered Ms. Crowell's house and garage, they did so in response to her September 14, 2000 criminal complaint against Mr. Sullivan, accusing him of illegally taping her

2

telephone conversations without her permission.  *See id*. at 10-12, 62; *see* Crowell Letter of 9/14/00, attached as Ex. 2 to Defendants' Mem. in Supp. of Mot. to Dismiss [doc. #79].  Defendants were given access to the premises by Ms. Crowell's nephew, James Hyland.  *See* Proposed Second Am. Compl. at 69-70.  Upon entering, Defendants searched the premises and seized certain items belonging to Mr. Sullivan.  *See id.* at 13.  Some of these items were handed to Defendants by Mr. Hyland.  *See id.* at 68-71.  In addition, Defendants "observed, read and listened to plaintiff Philip Sullivan's political writings." *See id.* at 59, 65.  These writings were "seriously critical of the ethics and honesty of Connecticut office holders." *Id*. at 12.  Defendants arrested Mr. Sullivan on criminal eavesdropping charges on May 25, 2001.  *See id.* at 13, 59, 65.

### III.

Plaintiffs recently filed a motion to amend their amended complaint and submitted a 102-page proposed Second Amended Complaint.  The Court had previously denied the majority of Plaintiffs' Motion to Amend, with one narrow exception, stating that "Plaintiffs' Section 1983 individual capacity claims described in Claims 10 and 11 of Plaintiffs' proposed amended complaint against Inspectors Zigmont and Coffey will remain in the case at this time."  Ruling on Pending Motions [doc. #212] at 7.  The Court also permitted Defendants to renew their previously filed Motion to Dismiss [doc. #79].  *See id*. at 5 n.1.  In their renewed motion to dismiss, Defendants move to dismiss Plaintiffs' 42 U.S.C. § 1983 Fourth Amendment and First Amendment retaliation claims again them.[1]   The Court addresses each claim in turn.

---

[1] Defendants noted that Plaintiffs' allegations could be read to state a malicious prosecution claim based on Defendants' investigation and arrest of Mr. Sullivan.  However, in their Objection to State's Renewed Motion to Dismiss [doc. #228], Plaintiffs expressly stated that they do not bring such a claim.  *See* Pls.' Obj. [doc. #228] at 5-6.  Therefore the Court does not address Defendants' malicious prosecution arguments.

3

### A. Fourth Amendment

Plaintiffs alleged that Defendants entered their home and searched and seized their personal property in violation of their Fourth Amendment rights.  Defendants move to dismiss this claim primarily on the ground that the property that was searched and seized had been abandoned.  In support of their argument, Defendants ask the Court to take judicial notice of Superior Court Judge Angelo dos Santos's decision in Plaintiffs' related state housing court action called *Sullivan v. Delisa*, No. CVN-0009-1381.  *See* Motion to Renew Defs.' Motion to Dismiss [doc. #223] at 2, 3 n.2.  In that decision, Judge dos Santos found that as of July 7, 2000, Plaintiffs had "abandoned their possession of the property where they had lived for thirty years." *Sullivan v. Delisa*, No. CVN-009-1381, slip op. at 12 (Conn. Super. Ct. June 10, 2004).  Defendants argue that Judge dos Santos's findings bar Plaintiffs from re-litigating those issues in the current action.

"It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998); *see also Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of pleadings in another lawsuit); *Jasper v. Sony Music Entertainment, Inc.*, No. 04 CIV. 7876(CM),  --- F. Supp. 2d ---, 2005 WL 1606409, at *3 (S.D.N.Y.  July 30, 2005) (court may take judicial notice of "such matters [as] public records, including pleadings, testimony, and decisions in prior lawsuits").  Judge dos Santos's decision is clearly a matter of public record, and one of which Plaintiffs undoubtedly had ample notice.   Therefore, the Court takes judicial notice of that decision.  Nevertheless, even after considering Judge Dos Santos's decision, the Court cannot conclude that it bars Plaintiffs from litigating their Fourth Amendment claim as a matter of law.

Fourth Amendment protections extend only to "unreasonable government intrusions into . . . legitimate expectations of privacy." *United States v. Balon*, 384 F.3d 38, 44 (2d Cir. 2004) (citations omitted). "[W]hen a person voluntarily abandons property . . . he forfeits any reasonable expectation of privacy that he might have had in the property." *United States v. Lee*, 916 F.2d 814, 818 (2d Cir. 1990). "Thus, even in the absence of a warrant and probable cause, a search of property that has been abandoned . . . does not violate a privacy interest." *Gudema v. Nassau County*, 163 F.3d 717, 722 (2d Cir. 1998). In determining whether there has been an abandonment, "the district court must focus on the intent of the person who is purported to have abandoned the property." *Lee*, 916 F.2d at 818. "[I]ntent may be inferred from words spoken, acts done, and other objective facts." *Id*. (citation omitted) (alteration in original).

Judge dos Santos found that Plaintiffs were "lawful possessors" of the premises until July 7, 2000. *Sullivan v. Delisa*, No. CVN-009-1831, slip op. at 12. After that time, Plaintiffs were informed by Ms. Crowell, on July 20, 2000 and July 31, 2000, that they would have to find a new place to live and were asked to remove their belongings from the premises no later than August 6, 2000. *Id*. at 6. Plaintiffs failed to comply. Thus Judge dos Santos concluded that by September 7, 2000, "plaintiffs by their actions abandoned their possession of the property where they had resided for thirty years." *Id*. at 12. The facts as found by Judge dos Santos strongly suggest that Plaintiffs lacked a legitimate expectation of privacy in both the premises and their personal property left at the premises. In an analogous situation, the Second Circuit held that "when a hotel guest's rental period has expired or been lawfully terminated, the guest does not have a legitimate expectation of privacy in the hotel room or in any articles therein of which the hotel lawfully takes possession." *United States v. Rahme*, 813 F.2d 31, 34 (2d Cir. 1987).

Nevertheless, the Court's analysis does not end here because in Connecticut, "issue preclusion only applies where there is an identity of issues between the prior and subsequent proceedings." *Doyle v. Town of Litchfield*, 372 F. Supp. 2d 288, 295 (D. Conn. 2005). "'[T]he prior litigation must have resolved the same legal or factual issue that is present in the second litigation.'" *Id*. (quoting *Corcoran v. Dep't of Soc'y Servs*., 271 Conn. 679, 690 (2004)) (alteration in original). Judge dos Santos' findings were not made in the context of a Fourth Amendment claim. Instead, Judge dos Santos adjudicated Plaintiffs' claim against members of their family for locking them out of Ms. Crowell's house under Connecticut General Statutes § 47a-43. *See* Conn. Gen. Stat. § 47a-43(a)(4) ("[W]hen the party put out of possession would be required to cause damage to the premises or commit a breach of the peace in order to regain possession, the party thus ejected, held out of possession, or suffering damage may exhibit his complaint to any judge of the Superior Court."). Thus while Judge dos Santos decided the issue of whether Plaintiffs had a possessory interest in the premises itself – an issue that Plaintiffs will not be permitted to re-litigate – he did not determine whether Plaintiffs retained a legitimate expectation of privacy in their personal property that remained locked in Ms. Crowell's house and garage. *See Sullivan v. Delisa*, No. CVN-009-1381, slip op. at 1 (Conn. Super. Ct. July 8, 2004) (Ruling on Defendant's [sic] Motion for an Order) ("Whether the plaintiffs 'abandoned' the premises they occupied . . . is an issue to be determined by the defendants."). Accordingly, the Court cannot conclude that Judge Dos Santos's decision and findings preclude Plaintiffs from asserting their Fourth Amendment claim as a matter of law.[2]

---

[2] Given the lack of identity between the issues presented by Plaintiffs' Fourth Amendment claims and those decided by Judge dos Santos, the *Rooker-Feldman* doctrine does not require the Court to abstain from hearing Plaintiffs' claims. *See Vargas v. City of New York*, 377 F.3d 200,

Defendants also assert that they had the consent of Ms. Crowell, the owner of the premises, to enter and search the house. *See, e.g.*, *United States v. Elliott*, 50 F.3d 180, 185 (2d Cir. 1995) ("[A] warrantless entry and search are permissible if the authorities have obtained the voluntary consent of a person authorized to grant such consent . . . Consent may validly be granted by . . . a third party who possesses common authority over the premises."). In order to support their argument, they rely on Ms. Crowell's September 14, 2000, letter to Assistant State's Attorney Stephen Sendensky. Defendants argue that in her letter Ms. Crowell "expressly directed" her son-in-law James Hyland to "consent and grant access to the house." Defs.' Mem. in Supp. of Motion to Dismiss [doc. #79] at 20.

The Court does not read Ms. Crowell's letter to confer such authority. The relevant portion of Ms. Crowell's letter read as follows: "Please contact my son-in-law James Hyland . . . to get further information and to arrange to talk/meet with me. Regrettably this situation has rattled my nerves, and I would like to have the security of having someone I now [sic] with me when we talk. Hope to hear from you soon." Crowell Letter of 9/14/00, attached as Ex. 2 to Defendants' Mem. in Supp. of Mot. to Dismiss [doc. #79]. This letter does not establish as a matter of law that Mr. Hyland clearly "had permission to gain access from the owner." Defs.' Mem. in Supp. of Motion to Dismiss [doc. #79] at 20. Rather, the letter simply indicates that Ms. Crowell authorized Mr. Hyland to speak to, and arrange a meeting with, law enforcement

---

205 (2d Cir. 2004) ("The [*Rooker-Feldman*] doctrine is generally applied coextensively with principles of res judicata (claim preclusion) and collateral estoppel (issue preclusion). If a suit or claim would be barred in state court by either, *Rooker-Feldman* prevents the federal court from asserting subject matter jurisdiction.").

officers. Therefore, the Court cannot conclude at this stage that Defendants had Ms. Crowell's permission to enter the premises.

Finally, Defendants argue, in a footnote, that even if they did not clearly have Ms. Crowell's consent to enter and search the premises, they are shielded by qualified immunity because "it would not be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Loria v. Gorman*, 306 F.3d 1271, 1281 (2d Cir. 2002); *see also* Defs' Mem. in Supp. of Motion to Dismiss [doc. #79] at 20 n.10. While the facts may well show that Defendants reasonably believed that Ms. Crowell had authorized Mr. Hyland to grant them permission to enter and search the premises, the Court cannot make this determination on the basis of the current record. *See Green v. Maraio*, 722 F.2d 1013, 1018 (2d Cir.1983) ("Usually, the defense of qualified immunity cannot support the grant of a Fed. R. Civ. P. 12(b)(6) motion . . ."); *see, e.g.*, *Liffiton v. Keuker*, 850 F.2d 73, 76 (2d Cir. 1998) (finding a motion to dismiss based on a defense of qualified immunity to be inappropriate because "[f]urther factual information" was required).

For the aforementioned reasons, the Court denies Defendants' Motion to Renew Defendants' Motion to Dismiss [doc. #223] as to Plaintiffs' Fourth Amendment claim for Defendants' warrantless search and seizure at the premises. However, Defendants are free to reassert their arguments regarding abandonment and consent at the summary judgment stage.

**B.**

Finally, Plaintiffs also appear to assert what the Court generously characterizes as a First Amendment retaliation claim. As best as the Court can tell, the essence of Plaintiffs' claim is that when Defendants entered the premises where they lived, they observed certain of Mr. Sullivan's

8

"political writings," and later arrested and prosecuted Mr. Sullivan in retaliation for the anti-government sentiments in those writings. *See* Proposed Second Am. Compl. at 12-13 (Defendants, "by way of their bad faith harassment, intimidation, [and] prosecution . . . has [sic] delayed plaintiff Phillip Sullivan from exercising his first amendment rights."). Plaintiffs do not allege that Defendants seized these writings, but only that they "observed, read, and listened to" them. *Id*. at 59.

In order to maintain a First Amendment retaliation claim, a plaintiff must prove: "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001). There is little doubt that Mr. Sullivan's "political writings" constitute protected speech. However, Plaintiffs' ability to establish the remaining elements of their claim is less clear.

It seems highly unlikely that Plaintiffs will be able to prove facts that would establish that "defendants' actions were motivated or substantially caused by his exercise of that right" in light of Ms. Crowell's criminal complaint against Mr. Sullivan. Where police officers have "probable cause to arrest" a person, "an inquiry into the underlying motive for the arrest need not be taken." *Curley*, 268 F.3d at 73. And ordinarily, "[w]hen information is received from a putative victim or an eyewitness, probable cause exists." *Id*. at 70. Nevertheless, whether probable cause to arrest Mr. Sullivan existed is a highly factual inquiry and one that is best left to a fully developed record.

Plaintiffs' allegations regarding "chilling" of Mr. Sullivan's First Amendment rights are similarly weak; they allege simply that Defendants actions "delayed" Mr. Sullivan's exercise of

9

his First Amendment rights. The Court doubts that this allegation is sufficient. The Second Circuit has held that "[a]llegations of a subjective 'chill'" are not adequate to support a First Amendment retaliation claim. *Curley*, 268 F.3d at 73 (quoting *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972)) (alternation in original). For example, in *Curley*, the Second Circuit rejected the Plaintiff's argument that his arrest "chilled" his campaign for village trustee by "demoraliz[ing]" it, stating that "the fact remains that Curley chose to run for public office even after [his arrest] . . . [w]here a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech." *Id*. at 73. Nevertheless, it is unclear from the pleadings whether Mr. Sullivan was merely delayed, or whether he was actually prevented from "going public" with his political messages, and therefore the Court is unable to conclude that the Plaintiffs can prove no set of facts in support of their First Amendment claims that would entitle them to relief.

For the aforementioned reasons, the Court DENIES Defendants' Motion to Renew Motion to Dismiss [**doc. #223**]. Accordingly, Plaintiffs claims against Defendants Charles Coffey and Gregory Zigmont are Plaintiffs' Fourth Amendment claims for illegal search and seizure of their property and First Amendment Retaliation claims, as set forth in Counts 10 and 11 of Plaintiffs' Proposed Second Amended Complaint remain in this lawsuit.

                                                IT IS SO ORDERED.

                                    /s/      Mark R. Kravitz
                                          United States District Judge

**Dated at New Haven, Connecticut: <u>September 12, 2005</u>**.